IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Willie Dupree, #269076, | ) | |
| | ) | Civil Action No. 3:05-667-CMC-JRM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Warden Mr. Padula; and | ) | **REPORT AND RECOMMENDATION** |
| Henry McMaster, Attorney | ) | |
| General for South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, John Willie Dupree ("Dupree"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment without parole plus thirty years (concurrent). He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 21, 2005. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on July 6, 2005. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on July 8, 2005, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on July 29, 2005.

## Procedural History

On or about October 9, 1998, Doris Coker was murdered and robbed in her home in Marlboro County. An investigation led to Dupree. On October 22, 1998, Dupree confessed to the crimes and was arrested. The State made known its intention to seek the death penalty, and

Glenn Manning and Wade Crowe were appointed to represent Dupree.  Indictments were returned

by the Grand Jury in February of 1999.  Dupree signed a written plea agreement on September

6, 2000.  He entered his pleas and was sentenced on that day.  No direct appeal was filed.

Dupree filed an application for post-conviction relief ("PCR") on January 20, 2001.  An

evidentiary hearing was held on May 20, 2003.  Dupree appeared and testified.  He was

represented by Russell V. Traw and Marion W. Scalise.  The PCR court issued a written order

of dismissal on July 1, 2003.

A Johnson[1] petition for writ of certiorari was filed on Dupee's behalf through the South

Carolina Office of Appellate Defense raising the following claim:

> Whether petitioner's counsels were ineffective for failing to investigate the
> possibility of obtaining exculpatory evidence through DNA testing of the
> organic material found on the victim?

Dupree filed a Pro Se Petition for Writ of Certiorari raising the following claims:

I.     Did the PCR Court err in holding that petitioner's Counsel was not
       ineffective in failing to move for suppression of evidence obtained in
       violation of his Miranda rights?
II.    Did the PCR Court err in holding that the Solicitor did not violate
       petitioner's right to due process in grand Jury proceeding by endorsing
       Victim-Witnesses.
III.   Did the PCR Court err in holding that petitioner's trial Counsel was not
       ineffective in failing to move to quash an indictment which did not confer
       subject matter Jurisdiction?
IV.    Did the PCR Court err in holding that petitioner's plea was not
       involuntarily entered as a result of prosecutorial misconduct?

The petitions for writ of certiorari were denied by South Carolina Supreme Court on December

14, 2004.  The Remittur was returned on January 5, 2005.

_____

[1]Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

**Grounds for Relief**

In his present petition, Dupree alleges that he is entitled to a writ of habeas corpus on the following grounds:

> Ground One: Violation of Miranda warning as it relates to confession and interrogating a suspect. (Petitioner).
>
> Ground Two: Denied the right to effective assistance of counsel.
>
>> 1) Petitioner trial attorney failure to inform an [sic] move to quash in indictment that failed to confer subject matter jurisdiction.
>>
>> 2) Instead of appointed Counsel protecting his clients Constitutional Rights all this attorney was interested in doing was getting this case over with by having his client plea out.
>>
>> 3) Counsel had an obligation an [sic] responsibility to inform his client and Court of this defect and move to quash the indictment for lack of subject matter jurisdiction.
>
> Ground Three: Guilty plea was not voluntary and intelligently entered based on prosecutorial misconduct and ineffective assistance of counsel.
>
> Ground Four: Petitioner was denied the right to effective assistance of counsel based on counsel failure to request an expert to assist the defense.
>
> Ground Six: Abandonment of motions and rights by his attorneys.

**Discussion**

A.    Procedural Bar

A number of the claims presented in the petition for writ of habeas corpus have not been presented to the state courts or, if they were presented, were abandoned at some point in the appeals process. Because these claims have never been reviewed by the highest court in South Carolina, they are now barred and cannot be considered by this court.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any
available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state

courts before seeking relief in the federal court. When subsections (b) and (c) are read in

conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state

courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838

( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in
> 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that
> as a matter of comity, federal courts should not consider a claim in a habeas
> corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of

his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required

to state all his grounds in that appeal. See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68, 221

S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction

relief (PCR). See S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state

all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time

deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must

be filed within one year of judgment, or if there is an appeal, within one year of the appellate court

decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present

only those issues which were presented to the South Carolina Supreme Court through direct appeal

or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[2]  If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

      **2.**      **Procedural bypass[3]**

        Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.   The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second

---

     [2]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  See discussion below on procedural bypass.

     [3]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default,

8

show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the

9

defaulted claim.  Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[4] with the South Carolina Supreme Court.  In Johnson, the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present.  Counsel is required to file the Johnson petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal.  A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the Johnson petition.  The applicant may file a pro se brief raising additional issues.  Foster v. State, 298 S.C. 306, 379 S.E.2d 907 (1989).  In ruling on a Johnson petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the Johnson petition and any issues raised by the applicant in his pro se brief.  Further, the South Carolina Supreme Court conducts a review of the record when a Johnson petition is filed.  King v. State, 308 S.C. 348, 417 S.E.2d 868 (1992).  In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court.  The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria.  Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR.  See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP.  Bryson v. State, 328 S.C.

---

[4]All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court.  See SCACR 227.

236, 493 S.E.2d 500 (1997). Counsel is required to object to any deficiencies in the order of the PCR court. McCullough v. State, 320 S.C. 270, 464 S.E.2d 340 (1995). This duty falls on the PCR applicant if not raised by counsel in the Johnson petition. See Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review."). See also, Padgett v. State, 324 S.C. 22, 484 S.E.2d 101 (1997) (issues not ruled on by PCR court are not preserved for appeal). Thus, when considering a Johnson petition, the South Carolina Supreme Court considers only those issues raised by the Johnson petition, raised in any pro se brief or petition filed by the applicant, and those issues specifically ruled on by the PCR court.

Grounds 5 and 6 listed above were not presented to the South Carolina Supreme Court in Dupree's Johnson petition or his pro se petition for writ of certiorari. Additionally, Ground 1 was not presented to the South Carolina Supreme Court as a free standing Fifth Amendment Miranda claim, but as a claim of ineffective assistance of counsel. Dupree has failed to show cause or prejudice for failing to present these claims, and they are not properly before this Court.[5]

B.    Ineffective Assistance of Counsel

Since Dupree filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615

---

[5]Ground 1 also is a non-jurisdictional defect which was waived by Dupree's plea of guilty. Tollett v. Henderson, 411 U.S. 258 (1973). The undersigned will discuss the alleged Miranda violation as a claim of ineffective assistance of counsel.

(4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998),

*cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--(1) resulted in a decision that was
> contrary to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this

court must separately analyze the "contrary to" and "unreasonable application" phrases of §

2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in [Supreme Court] cases …. A state- court
> decision will also be contrary to this Court's clearly established precedent
> if the state court confronts a set of facts that are materially indistinguishable
> from a decision of [the Supreme] Court and nevertheless arrives at a result
> different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the
> Supreme] Court's precedent if the state court identifies the correct
> governing legal rule from this Court's cases but unreasonably applies it to
> the facts of the particular state prisoner's case. Second, a state-court
> decision also involves an unreasonable application of [the] Court's
> precedent if the state court either unreasonably extends a legal principle
> from [Supreme Court] precedent to a new context where it should not apply
> or unreasonably refuses to extend that principle to a new context where it
> should apply.

Id. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

13

Strickland at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

1.    Armed Robbery Indictment

The body of the armed robbery indictment alleges:

> That John Willie Dupree did in Marlboro County on
> or about October 09, 1998, while armed with a
> deadly weapon feloniously take from the person or
> presence of the victim, Doris Coker, by means of
> force or intimidation goods or monies of said victim,
> such goods or monies being described as follows:
> purse containing goods or monies being described as
> follows: purse containing money and property valued
> at $450.00. (App. 165).

Dupree's ineffective assistance claims contained in Ground 2 in the present petition allege that his trial attorneys failed to move to quash the armed robbery indictment which was defective because it did not allege "asportation," i.e., that Dupree "did take and carry away" the stolen property.  Further, according to Dupree, this defect deprived the trial court of subject matter jurisdiction.  However, the ineffective assistance aspect of the claim was not reached because the PCR court granted summary dismissal to the claim insofar as it asserted lack of jurisdiction.  The PCR court specifically found that "the indictment as worded for armed robbery...is sufficient to notify the defendant of the charges against him and the elements of those charges." (App 101). This ruling was reiterated in the order of dismissal (App. 159-60).

Dupree raised the defective indictment issue as an ineffective assistance claim for failure to move to quash and as prosecutorial misconduct which rendered his plea involuntary in his pro se petition for writ of certiorari. (Questions III and IV, respectively).  The issue is encompassed in Grounds 3 and 4 of the present petition.

Prohibiting criminal acts and defining the essential elements of crimes is essentially a matter of state law.  The South Carolina courts have specifically found that the armed robbery

indictment was sufficient under state law.  It is not the function of this court to interpret matters of state law.  Pully v. Harris, 465 U.S. 37 (1984).  The determination of the South Carolina courts on this issue compels a conclusion that Dupree's trial attorneys did not commit error in failing to challenge the indictment.

A like result is mandated on Dupree's claim that his attorneys were ineffective for failing to challenge the court's subject matter jurisdiction.

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in …criminal cases").  Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong. Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005).  The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment."  State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental.  A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*.  Lack of subject matter jurisdiction may not be waived by the parties.  Brown v. State, 540 S.E.2d 846 (S.C. 2001).  The acts of a court which lacks subject matter jurisdiction are void.  State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

16

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. See Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

2.    DNA

Dupree asserts that his trial attorneys were ineffective because they did not retain an expert to examine DNA evidence, which according to Dupree, would show he did not commit the crimes.

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. Sneed v. Smith, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), cert. denied, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "Stirckland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), abrogated on other grounds by Williams v. Taylor, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas.

17

Strickland, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

Trial counsel were faced with a potential capital murder to which Dupree had confessed. According to counsel's testimony at the PCR hearing, Dupree expressed his desire to plead guilty from the beginning. However, about a year after Dupree was arrested, but prior to trial, Dupree asserted that two other individuals, Robert and Andrew Robertson, had actually murdered Coker. Dupree maintained that he was with the Robertsons on the night of the crime. (App. 114). Counsel instructed their investigator to attempt to locate the Robertsons, but no evidence of their existence could be found. With this information, Dupree decided to plead guilty. He now asserts that DNA testing would exonerate him. This issue was raised in Dupree's Johnson petition for writ of certiorari.[6]

The PCR court found:

> Regarding DNA evidence, this Court finds no probative evidence to support any claims of ineffective assistance of counsel. Both trial counsels testified that no DNA evidence was discussed with the Applicant; Wade Crow testified that there was no such evidence. (App. 162).

_____

[6]Copies of attorney correspondence references DNA and a SLED report showing the presence of hair specimens. No DNA testing was performed on these items.

The PCR court found the testimony of trial counsel to be credible, and the PCR testimony of Dupree to be not credible (Id.)  Based on the record, the PCR court found that Dupree had failed to meet his burden of proof to show that his attorneys committed error or that he suffered prejudice.

The undersigned finds that the PCR court correctly applied Strickland and Hill to this claim.  On the one hand, Dupree has shown that hair specimens were found but not tested.  On the other hand, Dupree has offered no evidence that the hair specimens were not his or the victims. It was Dupree's burden to develop such evidence during the PCR process.  Thus, even if it were error for trial counsel not to have initiated DNA testing on the hair specimens, Dupree has not shown prejudice.

      3.     Miranda[7]

During the PCR hearing, Dupree testified that South Carolina law enforcement officials came to him at his work in North Carolina.  When asked if he "wanted to go to the police station," Dupree testified "I told them that I would go." (App. 111).  After arriving at the South Carolina police station, Dupree gave a confession after which he signed a written Miranda waiver (App. 110-116).  The PCR court did not specifically address the Miranda issue, but found that Dupree "willingly accompanied the police to the station." (App. 162).

Dupree has not shown that his attorneys were ineffective for failing to challenge his confession.  Miranda applies to custodial interrogations.  Dupree has not shown that he was under arrest or in custody at the time he gave his statement.

_____

[7]As noted earlier this claim as presented in the present petition is an alleged non-jurisdictional defect waived by Dupee's guilty plea.

C.    Involuntary Guilty Plea

Dupree asserts that his attorneys coerced him into pleading guilty by threatening him with the death penalty.[8]  He testified that his attorneys showed him photographs of the murder scene and advised him that their introduction into evidence at trial would likely result in the imposition of the death penalty.  This testimony was supported by testimony of Dupree's mother. (App. 146).

A guilty plea to be valid must be the informed, voluntary decision of a competent defendant who has the opportunity to receive the advice of a reasonably competent attorney.  A defendant must be informed of the charges against him and the protections afforded by the United States Constitution.  Boykin v. Alabama, 395 U.S. 238 (1969) and Henderson v. Morgan, 426 U.S. 637 (1976).  The defendant must be informed of the direct consequences of his plea such as the maximum sentence and any applicable mandatory minimum sentence.  A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).

Dupree's guilty plea, entered after he received this information from his attorneys, is not invalid.  Defendants frequently plead guilty to avoid a potentially more severe sentence.  A plea agreement made through negotiation frequently benefits the defendant by limiting his exposure. Brady v. United States, 397 US 742 (1970).  A plea of guilty made out of fear of the death penalty is not invalid where the guilty plea was "the product of a free and rational choice,

---

[8]Petitioner also claims that the guilty plea was involuntary based on the deficient armed robbery indictment.  As discussed above, his claim is without merit.

especially where the defendant was represented by competent counsel whose advice was that the

plea would be to the defendant's advantage." <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970).

Here, Dupree signed a written plea agreement and entered his plea.  At the hearing, he

affirmed that his guilty plea was free and voluntary and that he was satisfied with his attorneys.

(App. 10-15).

<u>**Conclusion**</u>

Based on a review of the record, it is recommended that respondents' motion for summary

judgment be granted, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

January 27, 2006
Columbia, South Carolina


**The parties' attention is directed to the important information on the attached notice.**

21

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections.  Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.  Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").  This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.  See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
